David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*ANDREA THOMAS*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ANDREA THOMAS, | Civil Action No.: _____ |
| Plaintiff, | |
| v. | |
| SMITH-PALLUCK ASSOCIATES CORP. d/b/a LAS VEGAS ATHLETIC CLUBS, | **COMPLAINT** |
| Defendant. | |

For this Complaint, the Plaintiff, ANDREA THOMAS, by undersigned

counsel, states as follows:

### JURISDICTION

1.      This action arises out of Defendant's violations of the Telephone

Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") by negligently,

knowingly, and/or willfully placing automated calls to Plaintiff's cellular phone

without consent, thereby violating the TCPA.

2.     This action is also brought under Nevada Revised Statutes Chapter
598.0918 ("NRS 598") and Nevada Revised Statutes Chapter 41.600 *et seq.*
("NRS 41.600") for Defendant's deceptive trade practices as further described
herein.

3.     Plaintiff alleges as follows upon personal knowledge as to Plaintiff
and Plaintiff's own acts and experiences, and, as to all other matters, upon
information and belief, including investigation conducted by Plaintiff's attorneys.

4.     Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 and this
Court has original jurisdiction over Plaintiff's TCPA claims. *Mims v. Arrow Fin.*
*Serv., LLC*, 132 S.Ct. 740 (2012).

5.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) &
(c), because Plaintiff resides within the District of Nevada, a substantial portion of
the events or omissions giving rise to the claim occurred in this District, and
Defendant regularly conducts business in this District.

## **PARTIES**

6.     The Plaintiff, ANDREA THOMAS ("Plaintiff" or "Mrs. Thomas"), is
an adult individual residing in Las Vegas, Nevada.

7.     Plaintiff is, and at all times mentioned herein was, a "person" as
defined by 47 U.S.C. § 153(39).

8.     Defendant SMITH-PALLUCK ASSOCIATES CORP. d/b/a LAS

VEGAS ATHLETIC CLUBS ("LVAC"), is doing business in the State of Nevada.

9.      Defendant is and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (39).

10.     LVAC at all times acted by and through one or more of its agents or representatives.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

11.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

12.     The TCPA regulates, among other things, the use of automated telephone dialing systems.

13.     47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system ("ATDS") as equipment having the capacity –

> (A)     to store or produce telephone numbers to be called, using a random or sequential number generator; and

> (B)     to dial such numbers.

14.     Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS or an artificial or prerecorded voice to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

15.     According to findings by the Federal Communications Commission ("FCC"), such calls are prohibited because automated or prerecorded telephone

calls are a greater nuisance and invasion of privacy than live solicitation calls. The FCC also recognized that wireless customers are charged for incoming calls.[1]

16.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded calls to a wireless number by a creditor, or on behalf of a creditor, are permitted only if the calls are made with the "prior express consent" of the called party.[2]

17.     On July 10, 2015, the FCC issued FCC Order 15-72, wherein the FCC[3] stated that "[a] caller may not limit the manner in which revocation [of prior express consent to call] may occur" and that the "burden is on the caller to prove it obtained the necessary prior express consent". *Id*. at ¶ 30.

18.     Further, consumers (like the Plaintiff) may revoke consent through any reasonable means. *Id*. at ¶ 47.

19.     Nothing in the language of the TCPA or its legislative history supports the notion that Congress intended to override a consumer's common law right to revoke consent. *Id*. at ¶ 58.

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[2] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[3] See Declaratory Ruling and Order, Adopted June 18, 2015 and Released July 10, 2015 regarding *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135 (https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf).

20.     Indeed, some consumers may find unwanted intrusions by phone more offensive than home mailings because they can cost them money and because, for many, their phone is with them at almost all times. *Id*. at ¶ 61.

21.     Consumers have a right to revoke consent, using any reasonable method including orally or in writing. *Id*. at ¶ 64.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

22.     Within the two years prior to filing the instant complaint, the Plaintiff received numerous calls from the Defendant from the following phone number: (702) 933-0937.

23.     Due to financial hardship in or around January 2017, Plaintiff was unable to pay off her LVAC debt in full.

24.     As a result, LVAC began calling the Plaintiff incessantly and the Plaintiff requested that LVAC cease its calls to her cell phone.

25.     However, the Plaintiff continued receiving up to five (5) calls a day from LVAC on an almost daily basis.

26.     LVAC also (at all times herein) also communicated with the Plaintiff "pre-recorded" messages or messages which utilized an "artificial" or "pre-recorded" voice even after the Plaintiff told LVAC to stop calling her cell phone.

27.     In one instance on April 1, 2017, while Plaintiff was in an airport in Nashville Tennessee, the Plaintiff received yet another call from LVAC. Plaintiff

advised LVAC to stop calling her, to which a LVAC representative stated that he would note the account and stop the calls.

28.     The calls then ceased and the Plaintiff was hopeful these privacy invasions were over.  However, within a matter of weeks, LVAC resumed calling the Plaintiff multiple times a day – again, often through "pre-recorded" and artificial messages.

29.     Indeed, the Plaintiff received dozens of calls and voicemail messages as during the time period above even after asking LVAC to cease its calls to her cell phone.

30.     Specifically, the calls to Plaintiff included a pre-recorded voice message which stated "Thank you for being a member of Las Vegas Athletic Club. Our records indicate that your membership payments are past due. To make a payment and avoid further collection activity, please call our billing department at 702-933-0937, or you can visit us online at www.LVAC.com. Thank you."

31.     Upon information and belief, Defendant employs an automatic telephone dialing system ("ATDS") which meets the definition set forth in 47 U.S.C. § 227(a)(1).

32.     Defendant or its agent/s contacted Plaintiff on Plaintiff's cellular telephone number ending in "6811" via an ATDS as defined by 47 U.S.C. § 227(a)(1), as prohibited by 47 U.S.C. § 227(b)(1)(A).

33.     Moreover, the calls were made using a pre-recorded voice.

34.     In the calls that Plaintiff did answer, there would be a short pause lasting about two to three seconds between the time the calls were answered and the time that a live agent introduced themselves as a representative from Defendant; or the calls utilized a clear pre-recorded voice.

35.     Upon information and belief, based on the pause and lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used a predictive dialing system to place calls to Plaintiff.

36.     "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

37.     The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

38.     Upon information and belief, the predictive dialing system employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

39.    Upon information and believe, Plaintiff never consented to LVAC using an ATDS or pre-recorded voice to communicate with her cell phone to collect a debt or for any other reason.

40.    In January 2017 and no later than April 1, 2017, Plaintiff instructed Defendant or its agent(s) not to call the Plaintiff's cell phone ever again thereby revoking consent, if any ever existed, to be contacted by Defendant via an ATDS.

41.    Moreover, Defendant did not have prior express consent to place any automated or prerecorded calls to Plaintiff on Plaintiff's cellular telephone at any time.

42.    However, Defendant placed calls to the Plaintiff's cellular telephone without consent using an ATDS in violation of the TCPA.

43.    Defendant's ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

44.    The telephone number that Defendant used to contact Plaintiff was and is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

45.    Defendant's calls to Plaintiff's cellular telephone were not for "emergency purposes."

46.    Pursuant to the TCPA and the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that it had prior express consent to call

Plaintiff's cellular phone with an ATDS.

47.     The Plaintiff suffered actual harm and loss, since each of the unwanted calls depleted the Plaintiff's cell phone's battery, and the cost of electricity to recharge the phone is a tangible harm.  While small, this cost is a real one, and the cumulative effect can be consequential, just as is true for exposure to X-rays resulting from the Defendant's unwanted phone calls to the Plaintiff's cell phone.

48.     Plaintiff also suffered from an invasion of a legally protected interest by placing calls to the Plaintiff's personal phone line when the Defendant had no right to do so, resulting in an invasion of Plaintiff's right to privacy.  The TCPA protects consumers from this precise behavior.

49.     Plaintiff has a common law right to privacy.  *E.g.*, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 1155, 193 (1890). Congress sought to further protect that right by enacting the TCPA.

50.     "[W]hen a person must endure the bother of unwanted calls in the privacy of her home, her harm is similar to other traditional injuries that courts have long recognized, such as invasion of privacy and nuisance."  *Toldi v. Hyundai Capital Am.*, No. 2:16-CV—01877-APG-GWF, 2017 WL 736882, at *2 (D. Nev. Feb. 23, 2017).

51.     Plaintiff was also personally affected, since the Plaintiff felt that the Plaintiff's privacy had been invaded when the Defendant placed calls to the

Plaintiff's phone line without any consent to do so.

52.     The injury suffered by Plaintiff is concrete because Defendant's

violations caused Plaintiff to suffer an invasion of privacy.

## COUNT I

### Negligent Violations of the
### Telephone Consumer Protection Act,
### (47 U.S.C. § 227, *et seq.*)

53.     Plaintiff repeats and realleges the above paragraphs of this Complaint

and incorporates them herein by reference.

54.     Defendant negligently placed multiple automated calls to cellular

numbers belonging to Plaintiff without Plaintiff's prior express consent.

55.     Each of the aforementioned calls by Defendant constitutes a negligent

violation of the TCPA.

56.     As a result of Defendant's negligent violations of the TCPA, Plaintiff

is entitled to an award of $500.00 in statutory damages for each call in violation of

the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

57.     Additionally, Plaintiff is entitled to and seek injunctive relief

prohibiting such conduct by Defendant in the future.

…

…

…

## COUNT II

**Knowing and/or Willful Violations of the
Telephone Consumer Protection Act,
(47 U.S.C. § 227, *et seq.*)**

58.     Plaintiff repeats and realleges the above paragraphs of this Complaint
and incorporates them herein by reference.

59.     Defendant knowingly and/or willfully placed multiple automated calls
to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

60.     Each of the aforementioned calls by Defendant constitutes a knowing
and/or willful violation of the TCPA.

61.     As a result of Defendant's knowing and/or willful violations of the
TCPA, Plaintiff is entitled to an award of treble damages up to $1,500.00 for each
call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. §
227(b)(3)(C).

62.     Additionally, Plaintiff is entitled to seek injunctive relief prohibiting
such conduct by Defendant in the future.

## COUNT III

**Defendant's Violations of Nevada's
Deceptive Trade Practices Act
(NRS 598.0918)**

63.     Plaintiff repeats and realleges the above paragraphs of this Complaint
and incorporates them herein by reference.

64.     "Solicitation" means "the act of . . . seeking to obtain" something – in this case money.  *Solicitation*, Black's Law Dictionary (2d Pocket Ed. 2001).

65.     Here, the Defendant solicited the Plaintiff to seek or obtain money from the Plaintiff.

66.     On March 13, 2001, Assembly Bill 337 (AB 337) was introduced to the Nevada State Legislature.  AB 337 revised Nevada's Deceptive Trade Practices statutes codified at NRS 598 et seq.

67.     As expressed by Marilyn Skibinski, Regulatory Analyst, Bureau of Consumer Protection, AB 337 was enacted to "provide[] additional protection for consumers."  *See Minutes of the Meeting of the Assembly Committee on Commerce and Labor*, 71st Session, April 4, 2001, page 1082, which can be viewed at http://www.leg.state.nv.us/Division/Research/Library/LegHistory/LHs/2001/AB337,2001.pdf (the "AB 337 Minutes").

68.     Further, AB 337 was specifically intended to apply to companies (like the Defendant) using "automatic calling" or automated dialing systems.  As Ms. Rushton stated in response to Senator Maggie Carlton, "[that] is exactly what [AB 337 is intended to do."  *Id*. at page 4093.

69.     In specific, AB 337 made it a deceptive trade practice to, during a solicitation by telephone, to "[r]epeatedly or continuously conduct the solicitation or presentation in a manner that is considered by a reasonable person to be

annoying, abusive or harassing."

70.     Defendant repeatedly and continuously placed telephone calls to the Plaintiff's residential phone (which is also the Plaintiff's cellular phone) to solicit money from the Plaintiff in a manner that would be considered annoying, abusive or harassing by a reasonable person.

71.     Specifically, Defendant placed calls to Plaintiff's cell phone even after the Plaintiff demanded Defendant cease calls to the Plaintiff.  As discussed above, on April 1, 2017, while Plaintiff was in an airport in Nashville, Tennessee, she received a call from LVAC and demanded that these calls cease.   The LVAC representative stated that he would note the account and stop the calls.  However, LVAC continued invading the Plaintiff's privacy and knowingly disregarded the Plaintiff's request to cease calls to her.  Such conduct is unquestionably harassing and annoying.

72.     As a direct consequence of Defendant's harassing phone calls, acts, practices and conduct, the Plaintiff suffered and continues to suffer from anger, anxiety, emotional distress, frustration, rage, headaches, an upset stomach, heart palpitations, and has otherwise been totally annoyed by Defendant's intrusive and illegal phone calls.  Plaintiff has also lost the use of personal and family time while enduring these frustrations, as well as lost time and minutes from cell phone use, for which the Plaintiff is charged a fee.

73.     Defendant's violations of NRS 598.0918 constitute violations of NRS 41.600 and the Plaintiff is entitled to relief under NRS 41.600.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff prays that judgment be entered against the Defendant awarding the Plaintiff:

1.  Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

2.  Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

3.  Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

4.  Actual damages including, but not limited to, the emotional distress the Plaintiff has suffered (and continues to suffer) as a result of the intentional, reckless, and/or negligent violations of NRS 598.0918 as permitted under NRS 41.600;

5.  An award of attorney's fees and costs to counsel for Plaintiff; and

6.  Such other relief as the Court deems just and proper.

…

…

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: July 24, 2017

Respectfully submitted,

By  /s/ David H. Krieger, Esq.
_____

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*ANDREA THOMAS*